1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION

3    UNITED STATES OF AMERICA,     )  Docket No. 3:05CR781

4              Plaintiffs,         )  Toledo, Ohio

5                   v.             )  October 13, 2006

6    JOHN A. MARTINEZ, ET AL.,     )  Sentencing

7              Defendants.         )

8    ------------------------------

9        TRANSCRIPT OF SENTENCING OF JOSE C. MARTINEZ, JR.
                BEFORE THE HONORABLE DAVID A. KATZ
10                 UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:    Ava Dustin
                            Joe Wilson
14                          Office of the U.S. Attorney
                            Four SeaGate, Suite 308
15                          Toledo, Ohio 43604
                            (419) 259-6360
16

17   For the Defendant,
     Jose C. Martinez, Jr.: Jane S. Randall
18                            1400 Fifth Third Center
                              608 Madison Avenue
19                            Toledo, Ohio 43604
                              (419) 242-1400
20

21   Court Reporter:        Angela D. Nixon, RPR, CRR
                            1716 Spielbusch Avenue
22                          Toledo, Ohio 43624
                            (419) 260-5259
23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by notereading.

1          COURTROOM DEPUTY:  3:05CR781, defendant number

2   two, Jose C. Martinez, Jr., sentencing.

3          THE COURT:  Hold on just a minute.

4          MS. DUSTIN:  Your Honor, the defendant, Jose C.

5   Martinez, Jr. appears in front of you today for sentencing.

6   He's represented by attorney Jane Randall.

7          He was convicted after a jury trial on count one,

8   conspiracy to distribute and possess with intent to

9   distribute cocaine, and on counts 35, 40, 48, 49 and 50, of

10  unlawful use of communications facility.  The Government

11  has reviewed the presentence report and has no objections

12  to the sentencing guideline level or the factual content of

13  that report.

14         THE COURT:  Thank you.  Mr. Martinez, have you

15  had the opportunity to read and review with Ms. Randall,

16  your attorney, the presentence report prepared by the

17  probation officer in your case?

18         THE DEFENDANT:  Yes, I have, Your Honor.

19         THE COURT:  And Ms. Randall, except as reflected

20  in the back of that report and in your sentencing

21  memoranda, the last of which I reviewed this morning, are

22  there any additional issues with respect to the report

23  itself?

24         MS. RANDALL:  No, Your Honor.  I just would note

25  that there is one additional letter which The Court has

1    been forwarded from his wife which it received this

2    morning.

3              THE COURT:  I have -- I'll get to that in a

4    moment.

5              MS. RANDALL:  Okay.

6              THE COURT:  I have a letter dated the 10th from

7    Rebecca.

8              MS. RANDALL:  That would be it, I believe.

9              THE COURT:  Okay.  Thank you.  Then I'll order

10   that the presentence report be placed in the record under

11   seal.  Should an appeal be taken in this case, counsel on

12   appeal shall have access to that report, except the

13   recommendation section, which is to remain sealed.

14             I will note that I have received today and have

15   reviewed some letters, I believe I had reviewed previously,

16   I reviewed Rebecca Martinez' letter dated Tuesday of this

17   week, October 10th.

18             I've reviewed the letter from a Marie Cordrector

19   (phonetic) dated June 30, and a letter from The Economic

20   Opportunity Planning Association dated June -- July 17th,

21   and finally a letter from Sheriff Steyer of Seneca County

22   dated the 27th of July.  They will be made a part of the

23   record in this case.  And I will speak to them in a few

24   moments.

25             In looking at the objections and the addendum to

1    those objections, which I read this morning, I think they

2    were filed this morning.

3            MS. RANDALL:  That's correct.

4            THE COURT:  I will agree for reasons I will now

5    articulate, in the request for a base level offense of 32,

6    the presentence report at page 14 paragraph 151, concludes

7    that it is appropriate for a base offense level of 36,

8    based upon drug quantities found by the jury and attendant

9    criminal activity which was testified to at trial.  And as

10   we all know, I sat through that trial.  And quite frankly,

11   I believe that those drug quantities are probably

12   appropriate.  I don't find a significant level of

13   disagreement with the report's conclusion.  However, it

14   seems to me that one of the things we strive for in a

15   sentencing, in particular in a case like this, is to be

16   consistent among relatively equally culpable defendants in

17   a -- in a conspiracy; whereas here the jury found both

18   brothers guilty of the primary charges in this case.  And

19   that would be Count 1 of the indictment, the conspiracy

20   charge.  And where I heard the evidence in this long trial,

21   I have concluded that the -- the base offense level should

22   be the same.  And the base offense level in John Martinez's

23   case where the jury heard the same evidence was 32, and I

24   will use a 32 for consistency between those two defendants.

25           With respect to the second issue which I see,

1    adjustment for role in the offense, I am equally convinced

2    that both brothers were leaders and should be given a four

3    level increase in their offense level as a result of an

4    organizer and -- and/or leader of five or more participants

5    in the offense.  That was clear from the testimony I heard

6    as reflected in this report.  That takes us to a level 36

7    as the total offense level.  That results with a criminal

8    history category of one as contrasted to John's criminal

9    history category of three to a sentencing opportunity of

10   188 to 235 months.  I'll hear from Ms. Randall first with

11   regard to the conclusions I've just articulated, and then

12   from The Government.

13            MS. RANDALL:  Thank you.  Your Honor, first of

14   all, Joe accepts responsibility for what he did.

15   Consistently throughout the time I've represented him he

16   has said, I know I have to pay for what I did, I know I

17   have to pay for what I did, he has not shirked from that

18   one iota.  As The Court is aware, there were repeated

19   efforts to resolve this case short of litigation, short of

20   trial.  They did not succeed.  He was conflicted and, in

21   fact, to the extent that our society promotes family

22   values, he was placed with a Hobson's choice, and

23   ultimately, rather than see his dad die in prison, which is

24   what it would have amounted to given The Government's

25   proposed enhancement for his father's plea, he chose --

1   chose to go to litigation.  He made the ultimate sacrifice

2   knowing that he would, in all likelihood, be found guilty,

3   and knowing that as a result it would put this court in a

4   difficult position if it did not sentence him to more time

5   than was offered at the time of the plea opportunity.

6          Having said that, he faced the Hobson's choice,

7   and he did the right thing for himself morally within

8   the -- within the family.  Now, he did this notwithstanding

9   the fact that his father had not been an ideal father to

10  him while he was growing up.  He forgave his dad.  What had

11  been part of his childhood that may have contributed,

12  probably very well did contribute for this being a

13  situation where he would choose to do what he openly admits

14  that he did.

15         Having said that, he now faces The Court with

16  gratitude that The Court chooses to interpret the base

17  offense level as it did for his brother at a 36.  He begs

18  The Court to pay close attention to the letters that it has

19  beforehand, before The Court, in distinguishing him from

20  his brother and in determining what that sentence should

21  be.  He is his brother's keeper, they were in it to some

22  point together.  They are different, and where they are

23  different is what message this Court sends to society to

24  people similarly situated to Jose.

25         The fact that he was extremely hardworking and

1    consistently supported his family, not just as an

2    obligation, but as a privilege and opportunity to be a good

3    dad, cannot be ignored.  The fact that he was under

4    additional pressure financially because he wanted to bring

5    his daughter by his first wife into the home, made it an

6    additional strain on the family.  He responded to

7    temptation, he's guilty of that, no question about it.  He

8    did what he did.  But it doesn't stop the fact that Joe

9    Martinez, Jr., who is before The Court, is different than

10   his brother and his dad to the extent that he's also coming

11   open minded and as is his mother-in-law and can attest he

12   has done volunteer work for N.I.F.T.I and EEOPA.  He's

13   helped old folks with clearing lawns, mowing lawns,

14   shoveling, he's painted houses for the elderly.  He's

15   responded when requested to do something for the community.

16   So that before The Court is -- are two Joes, one bad, one

17   not -- not good, I'm sorry, one bad and one better.

18        All of us probably have two sides, and we all

19   want to be viewed in the light most favorable.  So he is

20   conflicted, but as his counsel I would beg The Court to

21   focus on the good Joe too, the Joe that did things not for

22   selfishness, but because he succumbed to temptation, the

23   Joe that wanted to be the good dad to his three children,

24   the good dad to his wife and the good husband to his wife,

25   I mean, perfect as we all are.  And the Joe that had a

1   sense of community spirit.

2        I believe he's already written to The Court of

3   his hopes for rehabilitation.  Joe has always wanted to be

4   better, to have a better life for his family and for

5   himself.  He'll pay the price but he's asking when The

6   Court sentence him that he make those distinctions that

7   have been noted in the objections to the report and by

8   letter and sentence him to the amount of time minimally

9   necessary to return him to society as a contributing adult

10  and as a caring father.

11       THE COURT:  Thank you.  Ms. Dustin, I'll get back

12  to them later, this is just on the sentence that -- on the

13  level that I came to, if you wanted to address it.

14       MS. DUSTIN:  With respect to the level, the

15  evidence, as The Court has heard during the trial, was

16  substantial in terms of the amount of cocaine that this

17  defendant was responsible for.  It's The Government's

18  position that the defendant was, in fact, responsible for a

19  level that would equate him with 70 kilograms of cocaine,

20  because that is what was testified to by Jose Mendez

21  Vargas, who was the courier that brought it from the

22  ultimate source of supply in Texas by Anthony Hobbs.  We

23  would note that it was this defendant that was supplying

24  his brother, John Martinez, with cocaine during the time

25  period between 2001 and 2005.

1         With respect to the amount of cocaine, it's The

2  Government's position that he should be at a base offense

3  level of 36, and that should be increased for four levels

4  for leader or organizer.  We would like to respond to

5  Ms. Randall's other arguments at the appropriate time.

6         THE COURT:  We'll get there.  Thank you.  I

7  recognize, as I said earlier, the level of the guidelines

8  based on direct drug attribution, but I believe that the

9  two brothers were equally culpable, and that therefore, a

10  32 with a four level enhancement for role in the offense is

11  appropriate, and I will sentence at a level 36, criminal

12  history one.

13         Before doing that, I would like to hear if there

14  is anything further from Ms. Randall, and if there is,

15  fine.  If there isn't I'd like to hear from Joe.  It's not

16  mandatory, but I always like to hear from the defendant.

17         THE DEFENDANT:  I've actually wrote something, I

18  didn't really go over it with my lawyer but --

19         THE COURT:  That's fine.

20         THE DEFENDANT:  It's how I feel right now.

21         THE COURT:  You don't have to stand up.  Could

22  you speak into the mike, though.

23         THE DEFENDANT:  Your Honor, I would like to

24  apologize to my family, this Court and my community.  I

25  feel as if I failed everybody.  I'm willing to accept full

1    responsibility for my actions.  I understand that some

2    people make statements against me and some people had two

3    or three chances to change their minds.  I guess what I'm

4    trying to say, some of those statements against me were

5    false, but being that they were first to make statements

6    automatically made the statements true.  I was willing to

7    cooperate but don't understand why I wasn't given the

8    chance to.  I would have gotten the chance to so I could

9    have been back with my family sooner or maybe even gotten

10   my job back at Ford.

11          If given a chance, Your Honor, I would like to

12   become a certified welder electrician if possible while in

13   prison.  Those are my goals.  Your Honor, I am 36 years

14   old.  I've never really been in any serious trouble.  I am

15   hoping for a second chance in life not to walk out those

16   doors but to see if you would please consider the mandatory

17   minimum of -- minimum sentence against me.  Once again,

18   Your Honor, I'm very, very sorry.

19          THE COURT:  Thank you, Joe.  Ms. Dustin?

20          MS. DUSTIN:  A couple things The Government wants

21   to point out with respect to some comments Ms. Randall

22   made.  At the time that we were engaging in pretrial

23   proceedings in this case, all three of the defendants from

24   the Martinez family were, in fact, given opportunities to

25   resolve the case short of trial.  And at the very end of

1   those proceedings, all three of these defendants met here

2   in this courtroom and decided to -- to go to trial rather

3   than pleading guilty and decided that all -- it was either

4   going to be all three of them went to trial together or all

5   three pled, and it was decided that they would proceed to

6   trial.  Nothing prevented this defendant from pleading

7   guilty to the indictment.  He certainly could have done

8   that too but he chose to exercise his right and he was

9   convicted.

10          Ms. Randall's also talked about the fact that

11  this defendant has never been in trouble and that he has no

12  criminal history, but he was the person in the family that

13  was supplying his brother, John, he was the supplier to --

14  of John from 2001 to 2005.  He was the one that had the

15  source of supply out of Texas.  He's the one who made the

16  connections.  And it was this defendant that was

17  responsible for flooding this community with a substantial

18  amount of cocaine from 2001 until 2005.

19          Ms. Randall talks about the community service

20  that this defendant has provided.  I think that when you

21  reflect upon the community service, all you need do is look

22  out at who's sitting next to each other, it's because of

23  this man that Derek Abitua is sitting here.  We have Jose

24  Martinez, Jr., 36 years old who's responsible for bringing

25  cocaine into this community.  That cocaine ends up in the

```
 1    hands of mid-level distributors like Antwan Wynn.  Antwan

 2    Wynn in turn sells it to lower level distributors like

 3    Derek Abitua who's barely an adult.  That's the community

 4    service that this man has provided over the course of the

 5    last five years.  And for those reasons, we ask that this

 6    court sentence the defendant to 235 months.

 7              THE COURT:  Thank you.

 8              MS. RANDALL:  Your Honor, my client would like an

 9    opportunity to respond.  Could I have a minute to hear what

10    he's going to say before he says it?

11                   (A brief discussion was had off the record.)

12              THE DEFENDANT:  Your Honor, I guess I was always

13    taught that every mind -- my mother always told me that

14    every mind is -- is its own world.  What my brother did,

15    that was his business.  And I think in the phone

16    conversations there was one phone conversation between me

17    and my brother.  If we were in it together as much as

18    people say we were, I think there would have been more

19    conversations involved than just one conversation between

20    me and my brother.  They're going by what one man, a

21    third-time felon has said against me, all the people that

22    talked against me.

23              Now, the numbers aren't right because The

24    Government says that, okay, Jose Vargas said he brought 20

25    to 40, well Anthony Hobbs said 70.  Now, who's lying?
```

1   Somebody's not telling the truth because Jose Vargas said

2   20 to 40 and that's on paper.  If that's my supplier and

3   Anthony Hobbs is the person I'm going to and he's saying

4   70, somebody's not telling the truth.

5            Now, The Government will say there's a guy by the

6   name of Mario, maybe there was a guy by the name of Mario,

7   but the owner of these drugs, which Alejandro Correra, he

8   was also dealing with other people here in Toledo, and

9   there is a confidential source against me, and I know that

10  because of my indictment, the discovery papers show that.

11  Like I said, the only person I ever spoke to was Jose

12  Mendez Vargas, and he in court said 20 to 40 and was given

13  two or three different chances to change his mind.

14           Now we got Anthony Hobbs who knows the system,

15  third time getting caught and says well, you know what 70.

16  He knows that more drugs lesser time for him.  And that's

17  what I want to say.  And that's the only thing I have to

18  say, Your Honor, could you please consider that, you know

19  what, his credibility is not the greatest and they're going

20  by a higher number.

21           I'm sorry, and as far as my brother goes, he's

22  old enough to do what he wants.  The only time I ever seen

23  my brother is at family gatherings on Sunday at my mom.  I

24  always worked, I've always took care of my kids, I worked

25  afternoons.  And whatever my brother did, he did on his

1  own.  Whatever my father did, he did on his own.  Like I

2  said, there's one phone conversation between me and my

3  brother.  I think if we were partners in crime or whatever,

4  I think we would have kept more tabs on each other more

5  often.  They got all the phone conversations.  They've got

6  I don't know how many conversations, the conversations just

7  me and my mother, me and my wife, me and my kids, me and my

8  brother because we both worked at Ford.  I called my

9  brother to see what lines were running.  I called my sister

10  what was she packing for lunch, that's what my phone calls

11  consisted of.  All these five phone conversations, two are

12  of them with Twan, two with Jose Vargas and one with Ruben

13  Vargas, not one I was charged with against my own brother.

14  I think if we were organized crime as organized crime

15  family as they say we were, I think we'd keep tabs with

16  each other more than one phone conversation.  And it was a

17  week and a half of phone conversations and they heard the

18  conversations, I heard the conversation, they consist of me

19  calling my daughter, my wife, my mother, my sister, my

20  brother.  It was not that -- they tapped my phones and they

21  heard the conversations, even with Twan.  The phones were

22  tapped for a minute, they got two conversations that I'm

23  being charged with for Twan.  They got one conversation

24  between me and Ruben Vargas, and there was 30 days of phone

25  recordings.  That's the only thing I have to say, Your

1  Honor.

2          MS. DUSTIN:  Nothing further.

3          MS. RANDALL:  I think if I might just summarize.

4  Mr. Martinez feels that The Government's take on the

5  criminal activity that was occurring here is other than his

6  experience.

7          THE COURT:  The most difficult and stressful part

8  of any judge's obligation is that of sentencing.  And my

9  experience is no less, no different.  I sat through the

10  trial, and I'm clothed with the same information that was

11  the jury.  The sad thing about criminal activity are two

12  truths:

13          One, human beings never realize what they have

14  until it's about to be taken from them.

15          And two, the most adversely impacted of all are

16  the family for which there is generally little or no blame,

17  upon which there is generally little or no blame.

18  Fortunately or unfortunately, except in one or two very

19  rare cases, we can't take that into consideration in

20  sentencing.  This is not one of those occasions.

21          I've read with interest all of these letters that

22  I've received over the months, but in particular your wife

23  Rebecca's.  And I noticed immediately a couple of things.

24  The obviously high level of intelligence and the ability to

25  put into words what is in feeling intellectually and

1  emotion, and I've read that.  Also understand that some of

2  the things you've done, and I must say because of for whom

3  they were done, it was under her influence, are recognized

4  in the difference between your criminal history and that of

5  your brother, and a significant difference in the sentences

6  that both of you receive.  That's driven by one thing and

7  one thing only, criminal history.  And I'm taking that

8  already into consideration.

9        And I've taken into consideration in giving you

10  the same level, 32 as your brother, that the jury verdict

11  and the testimony could justify clearly a higher level.

12  I've looked at the guidelines and I've looked clearly and

13  extensively at 3553A.

14        I've looked at your background, and that

15  background, outside of criminal activity of which there is

16  little except in this case, is exemplary.  And with all due

17  respect to you, sir, I attribute a lot of that to a woman

18  by the name of Rebecca to whom you are fortunate enough to

19  be married.  But I've looked at the nature and extent of

20  this conspiracy over at least a four-year period and the

21  adverse impact it had on this community.  And I'm taking

22  that into consideration in my sentencing, and your

23  involvement in it.

24        And I think there is a need for punishment, I

25  think there is a need for, in particular, not so much

1    punishment, as disabling you from participating in the drug

2    culture and feeding that drug culture with distribution.

3    That will protect the public.  I also believe it's

4    important, as you yourself have indicated, that you need

5    time for rehabilitation and training.  And unfortunately

6    for you, that is an extended period of time.  I've looked

7    at all of these things, and it is beyond my ken how, with

8    the evidence that the jury had, you could expect much less

9    than what I am going to sentence you to serve.  Unfortunate

10   for you and your family but as you yourself has said, it

11   was you who chose to participate in it.  You are separate

12   from your brother, you each had free will.  I'm going to

13   announce the sentence now after which you and your counsel

14   and The Government will all have an opportunity to react to

15   it.  Excuse me for just one moment.

16           I'll now announce that sentence.  Pursuant to the

17   Sentencing Reform Act of 1984 and 18 United States Code

18   section 3553(a), it is my judgment that the defendant, Jose

19   C. Martinez, Jr., is hereby committed to the custody of

20   Bureau of Prisons for -- to be imprisoned for a term of 220

21   months on Count 1 and a term of 48 months on each of Counts

22   35, 40, 48, 49 and 50, all to be served concurrently.  I

23   recommend to the bureau of prisons that he be designated to

24   a facility as close to Toledo, Ohio, as possible,

25   preferably that federal facility at Milan, Michigan, and

1   that he be given an opportunity to have training as an

2   electrician and welder so as to become certified in those

3   or either of those two endeavors.  He should also be given

4   credit for time served in federal custody on this crime.

5           Upon release from imprisonment, you shall be

6   placed on supervised release for a term of five years,

7   consisting of five years on Count 1 and three on each of

8   the other five counts, all to be served concurrently.

9   Within 72 hours of release from the custody of The Bureau

10  of Prisons, you shall report in person to the probation

11  office in this district, this division or to any other

12  district in which you are released.

13          While on supervised release, you shall not commit

14  another federal, state or local crime, shall not illegally

15  possess a controlled substance, shall comply with all

16  standard conditions adopted by this court and with the

17  following additional conditions:  You shall refrain from

18  any unlawful use of a controlled substance, and submit to

19  one drug test within 15 days of commencement of

20  supervision, and to at least two periodic drug tests

21  thereafter at times determined by your probation officer.

22  You shall not possess a firearm, destructive device or any

23  dangerous weapon.  You shall submit your person, residence,

24  place of business, computer or vehicle to a warrantless

25  search conducted and controlled by your United States

Probation Officer at a reasonable time in a reasonable
manner, based upon that officer's reasonable suspicion of
the presence of contraband or a violation of the condition
of supervised release.  Failure to submit to such a search
may be grounds for revocation of supervised release.  And
you shall inform other residents in your premises that the
premises may be subject to a search without a warrant
subject to this provision.

You shall participate in an outpatient program
approved by the United States Probation Office, pardon me,
for the treatment of drug and/or alcohol abuse which will
include testing to determine if you have reverted to
substance abuse.  You shall cooperate in the collection of
DNA, as directed by your probation officer.  You shall --
well, based upon my review of your financial condition as
set forth in the report I've received and reviewed, I find
that you did not have the ability to pay a fine and will
waive a fine in this case.  If you are convicted of another
violation of distribution -- of a controlled substance, you
will be declared ineligible for federal benefits for a
period of -- of five years.

Finally, you shall pay to the United States a
special assessment of $600, which is due and payable
immediately.  Any objections to the sentence?

MS. DUSTIN:  The Government does take exception

1    with respect to the base offense level, Your Honor.

2              THE COURT:  Thank you.

3              MS. RANDALL:  Only those as already noted.

4              THE COURT:  Very good.  Then I'll order that they

5    be -- that sentence be imposed as just stated on the

6    record.

7              Mr. Martinez, you have the right to appeal your

8    conviction and/or your sentence, particularly if you feel

9    that the sentence is contrary to law, or if you feel that

10   there is a -- an error or errors in your case, including

11   trial.  Any such appeal must be taken within ten days after

12   this matter is released -- reduced to a judgment entry

13   filed with the clerk of this court.  Any such notice of

14   appeal filed within ten days in the clerk's office on the

15   first floor of this courthouse will be done if you direct

16   your attorney to do so.  If on appeal you cannot afford an

17   attorney, one will be appointed for you by the Court of

18   Appeals for The Sixth Circuit.

19             I'll order that you be remanded to custody

20   pending designation to an institution by The Bureau of

21   Prisons, and that a written record of my reasons for

22   sentencing be provided to both The Bureau of Prisons and

23   the probation department in this district and division.

24   Anything further from The Government?

25             MS. DUSTIN:  No, Your Honor.

```
1              THE COURT:  Anything further from the defendant?

2              MS. RANDALL:  He just was confirming that The

3    Court is going to request Milan and it did?

4              THE COURT:  Yes.

5              THE DEFENDANT:  Thank you.

6              THE COURT:  Yes, I have already placed that on

7    the record and Cindy will place it in the entry, a copy of

8    which goes to The Bureau of Prisons and The Sentencing

9    Commission.  That concludes this hearing.

10             MS. RANDALL:  Thank you, Your Honor.

11             THE COURT:  Thank you.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                         C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6

7    --------------------------              -----------

8    Angela D. Nixon, RPR                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25